MILLER, *in Equity, versus* WHITTIER & *al.*

Where a person, in the possession and improvement of an estate, claiming to be the agent of the owner, neglects to keep an *accurate account* of the income and expenditures pertaining thereto; in stating the account between them, the master may reject the account presented by the trustee, and exercise a sound discretion upon the whole evidence before him, in charging the trustee with the income of the estate, and allowing him for such charges and disbursements, as shall appear to be reasonable.

Where there is fault on the part of the owner in not complying with his contract, although no proper account has been kept by the *trustee, he* is not chargeable with the utmost that might have been made out of the estate.

Exceptions to the report of a master, to avail, must either be supported by the special statements in that report, or by the production of the evidence on which they rest.

The necessary expenses, incurred by a subsequent mortgagee, to redeem a prior mortgage, which it was the duty of the mortgager to cancel, are justly chargeable upon the owner of the estate.

Upon a sum acknowledged to be due at a time specified, between the *cestui que trust* and the *trustee,* interest may legally be allowed.

Where a person takes a mortgage to secure advances and credits to be made to the mortgager within a time limited therein, no advances or credits after the time so limited, will be secured by that mortgage.

Where the parties to a bill, at the time of making their contract, recognized the existence of a debt due from one to the other, the consideration of that debt cannot afterwards be a subject of inquiry.

BILL IN EQUITY. The substance of the bill may be found in 32 Maine, 203.

On answers and proof, the case was again before the Court and considered in 33 Maine, 521.

At that hearing, a master was appointed " to state an account with Whittier, since November 17, 1845, exhibiting the sums due to him by the contract, and the claims he justly has against the estate, for services and expenditures; what property, securities and means, including rents and profits, he has received from it; the conveyances made, and the amounts received and receivable therefrom. Also to state the amounts due, *bona fide,* to Jones, on the several mortgages, and the rents, profits and income received by him from the property. And to state the amount originally secured to Mrs. Whittier,

by the mortgage to Smith, and the sum justly due to her on that account."

At the *nisi prius* term in April, 1853, APPLETON, J., presiding, the master's report was returned, when exceptions to it were taken by the parties to the bill.

The master, on examination of the books and papers presented by the respondent Whittier, as to the condition of the estate, was satisfied that they afforded no correct basis on which he could state an account between the *cestui que trust* and the trustee, he therefore charged the trustee with the income of the estate from various sources, and allowed on his various claims such compensation as appeared to him just and right from all the evidence before him.

He disallowed his claim for the services of his wife and family, and also his claim for a salary of $900, per year, after the first year. The master gave his reasons at length for his rejection of the defendant Whittier's books and schedules as a basis of a statement of the account between the parties, with sundry extracts from the books.

The master found, that the defendant was not a wrong-doer, and that there was fault upon the part of the plaintiff in not furnishing such means as were proper to carry on the estate, and that the defendant should not be charged to the utmost that might have been made out of the estate, but a fair rent for the use, and to be allowed for his time and trouble in the care of it, and for debts paid and repairs and improvements made.

The master found that Whittier was indebted to the plaintiff in the sum of $23943, and that he should be credited $18150. The crops of the year 1853 to be afterwards accounted for at an appraised value, all balances on books and all notes, except for land, to belong to said Whittier.

The incumbrances upon the estate by the advances of Jones, another defendant, were found to be $1527, if it was right to include in such incumbrances, advances and charges since the service of the plaintiff's bill, if the latter portion of the account should be rejected, the amount due Jones would be $358,40. And the decision of this question was referred by

Miller *v.* Whittier.

the master to the Court. The other accounts of Jones, were for money paid to redeem prior mortgages upon the same land conveyed to him which were allowed by the master. Billings & Wiggins mortgages,                                    $4940

|                                             |        |
| ------------------------------------------- | ------ |
| interest,                                   | 268    |
| per centage and expenses,                   | 251    |
| Amount paid on account of Smith's mortgages, | 677   |
| to which was added Jones's account against   |        |
| Whittier, to remove their incumbrances,     | 1527   |
|                                             | $7663  |
| The amount secured to Mrs. Whittier by con- |        |
| tract Nov. 17, 1845,                        | 3000   |
| interest to July 1, 1853,                   | 1365   |
|                                             | $4365  |

The respondent, Whittier, filed the following exceptions to the master's report : —

1. Because he has disregarded the terms and conditions expressed in the contract of Nov. 17, 1845 ; referred to in, and made a part of, complainant's bill.

2. Because he has wholly disregarded the books and vouchers exhibited to him by the respondent, and supported by his oath and other evidence, which show that the respondent realized nothing from the proceeds of all the property, real and personal, except what he had expended in improving and managing the same ; whereas the said master has made and reported an estimate of receipts for rent of houses, mills, farm, &c. which greatly exceeds the actual receipts.

3. Because he has not credited the respondent with the sum of nine hundred dollars per year, as was stipulated in said contract of Nov. 17, 1845, which, up to July 1, 1853, would amount to nearly seven thousand dollars, but in lieu thereof has allowed the respondent only the gross sum of twenty-five hundred dollars, only about three hundred dollars per annum.

4. Because he has credited the respondent with only the sum of $3000, for repairs and improvements, whereas they amounted to a much larger sum.

5. Because he has made the respondent liable for all debts by him contracted, now outstanding.

6. Because he has not credited the respondent with any sum for the services of his wife and family.

7. Because, among other things, he states "that he, (this respondent,) has been industrious and economical, there is abundant evidence; he seems to have been left to manage as he pleased, without pecuniary aid, or suggestions, or advice from the owners, till the bill was filed;" yet, notwithstanding, in and by his said report, he renders the respondent insolvent to the amount of more than five thousand dollars, and that, too, wholly by his "*industrious and economical*" *agency* in this estate, since the contract of Nov. 17, 1845.

8. Because he has assumed powers not upon him conferred by this Court, or by the contract of the parties.

9. Because he has charged the respondent with interest.

10. Because he has not credited the respondent any sum for clerk hire.

11. Because he has made the respondent assume all the risk of carrying on the concern through years of peril and hardship.

12. Because he has not credited the respondent with the amount paid to Cartland.

Peleg T. Jones, another respondent, filed the following exceptions to the master's report : —

1. For that said master in and by his said report, has not allowed him his charges against Whittier for his services, trouble and expenditures in defending this suit.

2. Because he has not allowed him his expenses in instituting and carrying on the suit in equity against John and Christopher Fallon for the redemption of the mortgaged property.

The complainant also filed the following exceptions to the master's report : —

1. Because he has not charged the respondent, Whittier, with rent for the farm and mills, since the service of this bill

upon him, but has only charged what he has actually received therefrom.

2. For allowing Whittier interest upon the sum of $1500, which was to be secured to him under the contract of November 17, 1845.

3. Because he has allowed to Jones the sum of $249,67, per centage and expenses on the amount paid by him to redeem prior mortgages.

4. Because in stating the amount due to Jones, he has stated Whittier's accouut, to be paid to Jones to remove incumbrances, to be $1529; when the sum should be $358,40 only.

5. For allowing Nancy Whittier as her due $4365; when nothing is due to her.

6. For allowing interest on the $3000, to be paid on certain conditions to Nancy Whittier, by the contract of November 17, 1845.

After the hearing upon the exceptions to the master's report, it was ordered, adjudged and decreed by the Judge presiding, *that* the report of the master, and all things and matters therein, stand ratified and confirmed, excepting so much as was changed and modified by the terms and orders contained in his decree.

1. It was ordered, that the sum of $251, allowed by the master to said Jones, as commissions upon the money paid to cancel the Billings and Wiggins mortgages, be disallowed and deducted from the amount by the said master reported due to said Jones; and that the sum of $1529, stated by the master in said Jones' final account as the amount of Whittier's account to be paid to Jones, to remove the incumbrances, be reduced to the sum of $358,40.

2. It was further ordered, that upon the payment by the plaintiff, to said Nancy Whittier, of the sum of $4365, with legal interest thereon from July 1, 1853, that said Joseph and Nancy Whittier shall execute deeds of release and quit-claim of the property described in said contract and in said deed from Amos Patten to said Joseph, set out in the plaintiff's bill,

with proper release of the right of said Nancy Whittier to dower in any part of said premises, according to the form of the deed annexed thereto. And said Joseph and Nancy shall each assign to the plaintiff the bonds or agreements of Peleg T. Jones, for the conveyance to him, said Joseph, or her, said Nancy, of any portion of said lands and buildings thereon, and deliver up all plans and evidences of title which he may have.

3. It was further ordered, that said Joseph Whittier should deliver up to the plaintiff all the personal property set forth in schedule M, annexed to said report; and assign all the mortgages, and deliver and indorse to the plaintiff all the notes set out in the schedule N, hereunto annexed; and deliver up to plaintiff all the crops of the farm on lands aforesaid, which shall be gathered prior to the delivery of possession of said lands.

4. And it was further ordered, adjudged and decreed, that upon payment by the plaintiff to said Jones of the sum of $6232,40, with legal interest thereon from July 1, 1853, the said Jones shall convey to the plaintiff all the lands conveyed to him by Joseph Whittier, which by his various bonds he became bound to convey to Joseph Whittier, and shall also convey to the plaintiff all the land which he was bound, by his bond to Nancy Whittier dated July 31, 1849, to convey to her, said Nancy, excepting therefrom all those tracts of land which he has conveyed as set forth in his answer, and a lot conveyed to Keff since the answer, in pursuance of the bond to Keff, referred to in said answer, with covenants of warranty against the claims of all persons claiming by, through or under him by deed, according to the form hereto annexed.

5. And it was further ordered, adjudged and decreed, that said Joseph Whittier was liable to and should pay to the plaintiff the sum of $4624,40, except so far as the same sum should be reduced by credits on account of crops of that season, according to the appraisement of the master as afterwards provided; and said master was to appraise such · por-

tions of said crops as might be delivered by said Whittier to the plaintiff, and to direct the allowance to be made therefor.

6. It was further ordered, that said Nancy Whittier should not be entitled to costs, nor compelled to pay costs.

7. It was further ordered and decreed that the plaintiff recover his costs, including his costs before the master, and also the master's costs and fees against Joseph Whittier.

8. It was further decreed, that all the exceptions filed by the parties not sustained by this decree, were overruled and set aside.

To so much of the decree of the Judge presiding, as required the plaintiff to pay said Nancy Whittier $4365 and interest, before he should be entitled to a conveyance from said Joseph Whittier and wife; and to so much of said decree as overruled the plaintiff's exceptions to the master's report; also to the refusal of the Judge to decree costs in favor of plaintiff against said Jones, the plaintiff excepted.

The defendants, Whittier and Jones, also filed exceptions to the decree overruling their exceptions to the report of the master, and also to the rulings of the Judge allowing certain exceptions taken by plaintiff to the master's report.

*Cutting*, for respondents.

*Rowe & Bartlett*, for plaintiff.

RICE, J. — This case which has been before this Court on two former occasions, 32 Maine, 203 and 33 Maine, 521, now comes up on exceptions to the rulings of the Judge before whom the report of the master was presented, with the exceptions filed to that report by several parties to the bill. The exceptions to the rulings of the Judge below, present for the consideration of this Court, all the exceptions which were taken to the report of the master.

The instructions under which the master acted, were " to state an account with Whittier since Nov. 17, 1845, exhibiting the sum due to him by the contract, and the claim which he justly has against the estate for services and expenditures; what property, securities, and means, including rents and

profits he has received from it, and the conveyances made, and the amounts received and receivable therefrom. Also to state the account due *bona fide* to Jones on the several mortgages, and the rents, profits and income received by him from the property. And to state the amount originally due to Mrs. Whittier by the mortgage to Smith, and the sum justly due to her on that account."

Whittier claims to have acted as the agent of the owners of the estate, and as such to be entitled to a stipulated sum, $900, as an annual salary for himself, and also to be entitled to compensation for the services of his wife and minor children upon the estate.

The contract to which both parties refer as the basis of their claims, is dated Nov. 17, 1845, and is recited, at length, in 32 Maine, 203. The parties to that contract, at the time it was executed, evidently contemplated an arrangement which was to continue one year only, during which Whittier was to receive a salary of $900, and it was the expectation of the parties that at the end of the year, all the affairs connected with the estate should have been finally adjusted and closed up. But the year expired and neither party made any movement to procure a final settlement, and the master states in his report, that from the end of the first year, the defendant seems to have treated the estate as his own. The papers and evidence show no claim on his part to the salary, and no recognition of his right to it on the part of the owners. For this reason, perhaps, the accounts of Whittier have been so loosely kept, as to present no satisfactory basis upon which the master could state an account between him and the estate, and he came to the conclusion, that as the actual receipts and expenditures with which the estate should be charged could not be ascertained and stated from the books and papers, it only remained to charge the defendant Whittier, with such items and income of the estate from various sources, by him received, as he should be rightfully charged with, and to make for him such allowances on the various

claims as will be a just compensation for his services and expenditures and claims against the estate.

Most of the exceptions of the defendant Whittier, are founded upon objections to the basis assumed by the master, on which to state the account between the parties. It will therefore be unnecessary to notice all of them in detail.

It was the duty of the defendant, who claims to have acted as the agent and trustee of the owners, to have kept an accurate (account) of all his transactions with the estate. He had the power, and could have so kept his accounts as to have made all his transactions plain, and to have presented his claim upon his principal in such a manner as to preclude all uncertainty as to the rights of the parties. This he has failed to do, and the master has been compelled, in order to state an account, which should be satisfactory, to adopt the basis upon which he has acted. Having no certain and reliable data upon which to proceed, he was authorized to exercise a sound discretion, upon the whole evidence presented, and so to state his account, as to do justice to all parties, as nearly as practicable. *Dexter & al.* v. *Arnold & al.*, 2 Sum. 108; *Lupton* v. *White*, 15 Ves. 440. And the defendant, who by his negligence has caused this necessity, is not in a position to complain.

As to the fourth exception, it does not appear that the $3000 allowed by the master, was not sufficient to cover all the expenses for repairs and improvements made by the defendant. Exceptions are to be regarded so far only, as they are supported by the special statements of the master, or by evidence which ought to be brought before the Court by reference to the particular testimony on which the exceptor relies. *Harding* v. *Hanley*, 11 Wheat. 103. There is nothing contained in the report, nor any evidence presented to the Court, which would lead to the conclusion that the master erred in this matter.

The sum secured by the Cartland mortgage, referred to in the defendant's 12th exception, was paid several years before the adjustment in 1845, though the mortgage was not dis-

charged by Cartland at that time. This claim was not filed among the schedule of liabilities, at the time of that adjustment, and the bill and answers contain no reference to that debt. The presumption therefore is, that the claim had been settled by the parties, before the present controversy arose. At least there is no sufficient evidence to show that it should now be deemed an existing charge upon the estate.

The other exceptions of Whittier arise from objections to the basis assumed by the master. That basis being sustained, the exceptions necessarily become unavailing.

The defendant Jones has received conveyances of different portions of the estate from Whittier, some of which are in form absolute, and all of which the plaintiff alleges were fraudulent. But this Court, when this case was before it on a former occasion, 32 Maine, 521, found that the charge of fraud in these conveyances was not sustained by the proofs, but that the conveyances referred to, operated as mortgages to secure the amount in which Whittier was, or might be, indebted to Jones. The mortgages in the hands of the Fallons were of an earlier date than those conveyances to Jones, and he must have had knowledge of their existence before he made any advances under the securities which he held upon the estate.

To preserve his own securities, it became necessary to redeem the estate from the Fallons, and to effect that object he instituted and prosecuted a bill in equity. Though this proceeding was for his own benefit, to protect himself against prior incumbrances, it also enured to the benefit of other parties, whose duty it was to have redeemed the estate from these mortgages. They cannot, therefore, justly complain, that they are required to pay the reasonable and necessary expenses by which the estate was preserved from forfeiture. The defendant's exceptions to the decree of the Judge, on this point, are sustained, and the report of the master affirmed.

As to the charges made by Jones against Whittier, for his services, trouble and expenditures in defending this suit, no satisfactory reason has been suggested for allowing them

Miller *v.* Whittier.

against the plaintiff. Those transactions were entirely between Jones and Whittier and should be adjusted by the parties interested.

The exceptions of Jones to the decree of the Judge, with the exception above, are overruled.

The exceptions of the plaintiff to the master's report are also brought before us.

To the first of plaintiff's exceptions it may be remarked, that he does not place himself in a position to claim the utmost that might have been made out of the estate. He is not himself free from fault. By failing to comply with the terms of the contract of 1845, he left the defendant in a situation of difficulty, so that the estate was not made as productive as it otherwise might have been. It was, therefore, proper that the master, in stating the account between the parties, should exercise a sound discretion, in view of all the circumstances and facts in the case. Our attention has not been called to any evidence in the case which shows, that the master has fallen into error, in the result to which he has arrived in this branch of the account.

The inference to be drawn from the contract of Nov. 1845, is, that Whittier had a claim then due against the estate for $1500. This sum was to have been secured by mortgage on the property, at such time as should be agreed upon. That mortgage was never executed, probably for the reason, that the affairs of the estate were never closed up as contemplated by that contract. But that would seem to be no good reason why the sum then due Whittier should not be upon interest. We think it should. The plaintiff's second exception was therefore properly overruled.

The plaintiff's third exception is sustained for reasons already stated for overruling the second exception of the defendant Jones.

The plaintiff's fourth exception is also properly sustained. By reference to the several conveyances from Whittier to Jones, it will be perceived, that they only purport to secure what may be due by note, account or otherwise, by the 23d

of November, 1849. Advances made and credits given to Whittier after that time, are not covered by these mortgages, and cannot, therefore, be justly chargeable upon the estate. In the most favorable view that can be taken for Jones, advances and credits to Whittier, under these mortgages, should have ceased on the service of the plaintiff's bill on Jones. The allowance of $1527, is therefore properly reduced to $358,40.

The plaintiff's 5th and 6th exceptions refer to the amount allowed to Nancy Whittier. The contract of Nov. 17, 1845, was intended to be an adjustment of the affairs of all parties interested in the estate up to that time. The stipulation, for the payment to Nancy Whittier of three thousand dollars, was evidently intended to be a substitute for her existing rights in the estate. What those rights were, was then well known to Wendell & Co., the plaintiff's assignors, and having been thus recognized and provided for, it is now too late to inquire into the consideration upon which they originally rested. Those exceptions were properly overruled.

The items which are deducted from the account of Jones, having been charged by the master to Whittier, are to be deducted from the balance due from Whittier to the plaintiff.

The plaintiff is also to produce and deliver up to Whittier the notes formerly held by Grant and Stone against him, stated, in the contract of 1845, to amount at that time to $10500.

The master is also to find and state what amount, if any thing, shall be charged to Whittier for the use and occupation of the estate for the additional year, and add the sum to the account.

The decree of the Court below is to be modified so as to conform to these principles, and will then stand as the decree of the Court.

SHEPLEY, C. J. and TENNEY and HATHAWAY, J. J., concurred.